[S. F. No. 8505. In Bank.—October 20, 1917.]

## ROBERT E. BAINES, Petitioner, v. J. H. ZEMANSKY, as Registrar, etc., Respondent.

ELECTIONS—SAN FRANCISCO CHARTER PROVISIONS—RECALL PETITION—DUTY OF REGISTRAR OF VOTERS.—Under the San Francisco charter, as amended January 24, 1917, when a "recall" petition is filed with the board of election commissioners with the requisite number of signatures, it becomes the duty of the registrar of voters, if the signatures are genuine and not subject to any other lawful objection, to attach his certificate showing the result of his examination and mail a copy to the persons who filed the petition and also to report the sufficiency of the petitions to the board of election commissioners and exhibit his certificates to the board, whereupon it becomes the duty of the board to call an election for a vote on such recall.

ID.—RECALL PETITION — PROHIBITION — RESTRAINING ORDER — SUPERIOR COURT.—Neither the pending of an application in the superior court for a writ of prohibition and the issuing of an alternative writ thereon nor the pendency of an action for an injunction in the same court and the issuing of a restraining order restraining the registrar from further action on a recall petition until the hearing of said application is a sufficient answer to an application for *mandamus* to compel the registrar to examine and certify the result of his completed examination of a recall petition.

ID.—PROHIBITION — CONSTITUTIONAL LAW — JURISDICTION OF SUPERIOR COURT.—Prohibition is by the constitution limited to the arrest of judicial proceedings "when without or in excess of jurisdiction."

ID.—PROHIBITION—MINISTERIAL OFFICER.—Prohibition is not the proper remedy to stay the action of a ministerial officer.

ID.—CONSTITUTIONAL LAW—WRIT OF PROHIBITION.—Section 1102 of the Code of Civil Procedure, as amended by Statutes of 1881, page 20, so far as it purports to extend the office of the writ of prohibition so as to include ministerial functions, is unconstitutional and invalid.

ID.—MUNICIPAL CORPORATIONS — FREEHOLDERS' CHARTER.—Under the plenary authority granted to freeholders' charters by the last para-

CLXXVI Cal.—24

graph of subdivision 4 of section 8½ of article XI of the constitution, it was competent for the charter of San Francisco, or for any freeholders' charter framed under that article, to provide that the question of the sufficiency of a recall petition, or of the legality or regularity of other proceedings relating thereto, should be determined by an officer specially authorized, and to exclude the superior court from revising or annulling such jurisdiction.

MUNICIPAL CORPORATIONS—OFFICERS—TENURE OF OFFICE.—Any person elected or appointed to office under a charter is presumed to accept the same with the condition that his tenure may be terminated at any time in the manner prescribed by the charter.

ELECTION LAW — RECALL PETITION — SAN FRANCISCO CHARTER—SUFFICIENCY OF PETITION — REGISTRAR'S EXCLUSIVE JURISDICTION.—The registrar of voters is the exclusive judge of the sufficiency of recall petitions in all particulars, and courts are excluded from inquiry concerning them.

ID.—SAN FRANCISCO CHARTER — RECALL PETITION — POWERS OF REGISTRAR.—In determining the sufficiency of a recall petition the powers of the registrar of voters are not so narrow and perfunctory as to confine him to facts disclosed on the face of the petition, the records of registration, and testimony or affidavits of voters to whom he has mailed notices as provided in the charter; being required to complete his investigations as to the conformity of the petition to legal requirements and as to the number of lawful signatures, and make his final decision within fifteen days, he has authority to inquire and take such evidence as he can obtain in the brief time allowed him for investigation.

ID.—RECALL PETITION—GENUINENESS OF SIGNATURES—SAN FRANCISCO CHARTER—LIMITATIONS ON INQUIRY.—The registrar of voters is not the only person authorized to "call in question" a signature; the officer to be subjected to the ordeal is entitled to have the voter notified. Whether other registered voters may not also have the right to call signatures in question is not determined, that point not having been raised in the present case.

APPLICATION for Writ of Mandate against J. H. Zemansky, Registrar of Voters of San Francisco.

The facts are stated in the opinion of the court.

Grover O'Connor, George F. Snyder, Andrew J. Branagan, and Colman Schwartz, for Petitioner.

Thomas V. Cator, for Respondent.

U'Ren & Beard, C. M. Fickert, and James F. Brennan, *Amici Curiae.*

SHAW, J.—This is a proceeding for a writ of mandate to compel the registrar of voters of San Francisco to examine into the sufficiency or insufficiency of a petition filed with the board of election commissioners for the recall of Charles M. Fickert, as district attorney of said city and county, and thereupon to attach to said petition a certificate showing the result of such examination, mail a copy thereof to the person who filed the petition, and report the same to the board of election commissioners.

A recall petition against Charles M. Fickert was filed with the board of election commissioners, consisting of 232 sections, and bearing 15,214 names purporting to be signatures of registered voters of said city and county, asking for the said recall. The number of legal signatures necessary to authorize a recall election in said city and county was and is 11,837. The registrar of voters proceeded thereupon to examine said petition and verify the signatures thereto. After such examination he attached to the petition a certificate stating that there were only 10,219 genuine signatures of registered and qualified electors of San Francisco thereto. Thereupon, within the twenty days allowed for that purpose, a supplemental petition was filed, embracing 120 sections with 5,104 additional signatures. The registrar then proceeded to examine said supplemental petition to verify the signatures thereon, and, after completing his examination, ascertained and determined that there were 3,050 genuine signatures thereto. The two petitions taken together have, therefore, 13,269 signatures attached, and if such signatures are genuine and not subject to any other lawful objection, it is the duty of the registrar under the provisions of the San Francisco charter, as amended on January 24, 1917, not only to attach thereto his certificates, showing the result of his examinations, and mail a copy thereof to the persons who filed the petitions, which he must do whether there are enough signatures or not, but also to report the sufficiency of said petitions to the board of election commissioners, and exhibit to said board the certificates attached to said petitions. When he does this it becomes the duty of the board of election commissioners to call an election for a vote on such recall. (Charter, art. XI, c. V, secs. 1 and 2; c. III, secs. 2 and 3; Stats. 1917, p. 1728.)

The answer of the registrar admits the filing of the petition and supplemental petition aforesaid for the recall of Fickert, with the number of signatures as stated; that he has examined and determined as to the genuineness of such signatures, and as to the sufficiency of the two petitions as above stated, and avers that on August 30, 1917, before he had made or attached thereto his certificates of the result, and when he was ready and willing to do so, he was served with an alternative writ of prohibition, issued out of the superior court of the city and county of San Francisco in a proceeding in prohibition, begun by Charles M. Fickert against said registrar, commanding him to refrain from further action upon said recall petitions until the further order of the court; that on August 31, 1917, he was served with a restraining order of said superior court, made in an action begun therein by said Fickert in his own behalf as the officer against whom the recall petitions were filed, and also as a citizen and taxpayer of said city and county, which said order restrained him as such registrar from further action upon said recall petitions until the hearing of the application for an injunction as prayed for in said action; and that said proceeding in prohibition, and said action for an injunction, are still pending in said superior court, and said alternative writ of prohibition and said restraining order still remain in full force and effect.

The registrar asserts his willingness to proceed with the recall petitions, and states that he believes the superior court was and is without jurisdiction to issue said writ and restraining order, and that he has made and presented to said court his objections to its jurisdiction of said matters, but that said court has not yet determined the merits of said objections.

Although he so believes that said superior court is without jurisdiction, he is unwilling to disregard or disobey its writs and orders in said cases, deeming it more orderly to test the matter in a regular way in a higher court. Therefore he submits to this court the questions whether or not the superior court has jurisdiction and lawful power to issue said writ and make said restraining order, and whether or not the same are void, and declares his readiness to do as this court shall order. Briefs on these questions have been filed in his

behalf, and also for Mr. Fickert, and for the filers of said recall petitions.

Under well-established principles of law it cannot be denied that if the superior court has jurisdiction, upon any possible state of facts, to prohibit or enjoin the registrar of voters from proceeding with such recall petitions in the manner prescribed in the charter, the sufficiency of the petition or complaint upon which that court acts, so far as the facts stated therein are concerned, cannot be inquired into by this court in this collateral proceeding, but that, on the contrary, its writs and orders must be upheld so far as this case is concerned, and can only be questioned when presented by way of appeal after the final judgment of said court in the cause. If that court has jurisdiction, it may decide the wrong as well as the right in the matter, and its decision is binding on all other persons, officers, and courts, save upon an appeal to the court having appellate jurisdiction of the cause. The sole question for our consideration, therefore, is whether or not the court has jurisdiction of the subject matter of said proceeding in prohibition and of said action for an injunction. For the solution of this question we must look to the provisions of the city charter, the allegations upon which the rights and orders were issued, and the general principles of law applicable to the subject.

The petition for the writ of prohibition, and the complaint for the injunction in the superior court, contained precisely the same allegations, except that the latter stated that Fickert is a citizen and taxpayer of the city and county, and that the board of election commissioners, if said recall proceedings are continued, will immediately call an election to determine the matter of said recall; that the holding of such election would require an expenditure of the public moneys of said city and county to the amount of fifty thousand dollars; and that for a proportional part . thereof said Fickert is liable to be assessed by way of taxation. These additional allegations have no bearing on the question, unless they may give the plaintiff in the injunction suit a status which would enable him to maintain the action for injunction if the court has jurisdiction of such action as established by the other allegations of the complaint.

The petition for the writ of prohibition, and the complaint for injunction, are both predicated upon the theory that a

number of the sections of which the petition is composed are false, fictitious and forged. It is alleged that thirty-three sections of said petitions, containing 6,125 signatures, are fictitious and fraudulent, and are not entitled to be considered a part of the petition, and that without the said signatures the number remaining of genuine signatures is insufficient to authorize any recall election. The charter requires each section of a petition to be verified by the affidavit of the person who solicited the signatures thereto, to the effect that said section had not been at any time left where persons could sign it out of the presence of the said solicitor, that each signature was made in the presence of said solicitor, and is the genuine signature of the person whose name it purports to be, and that the solicitor was at the time a duly qualified voter of San Francisco. (Sec. 2, c. III, art. XI.) The charge of fraud consists of detailed statements alleging in substance that, with respect to each of the sections specified, the statements in each affidavit are untrue, in that the solicitor did not see the persons sign their names; that the signatures were made out of the presence of the solicitor; that many of the signatures are forgeries, the number not being stated; that such section was frequently out of the possession of the solicitor, and where it could be signed by persons without the solicitor's knowledge, and, as to some of the sections, that the solicitor was not a qualified voter.

Section 2 of chapter III, article XI, of the charter further provides that when a recall petition, signed and verified in the manner specified in that section, is filed, no signature can be thereafter revoked, and that, "unless and until it be proven otherwise by official investigation by the registrar of voters, it shall be presumed that the petition filed conforms to all legal requirements and contains the signatures of the requisite number of registered voters, and after an election based thereon, the sufficiency of such petition shall not be questioned." The important parts of section 3 relating to this question are as follows:

"The Registrar of Voters shall have fifteen days after the filing of such petition, and the same time after receipt by him of a Charter amendment petition in which to verify the same and certify the result thereof in the manner provided by this section. Within such time, the Registrar of Voters shall finally determine from the records of registration

whether or not said petition is signed by the requisite number of electors entitled to vote. If any signature be called in question, the said Registrar of Voters shall mail notice to such purported signer, stating that his or her name is attached to such petition and citing him or her to appear before said Registrar of Voters forthwith, naming the time and place. Said citation shall inclose a blank affidavit, denying that the person signing such affidavit signed such petition, and said citation shall also contain a statement, that a blank affidavit denying that such person signed such petition, is inclosed, and that if such person does not desire to attend in person to deny his signature he may swear to such affidavit of denial before any officer authorized to take oaths, and mail the same to the Registrar of Voters, and that if he does not so attend and deny such signature in person, or by making and mailing such affidavit of denial that his purported signature to such petition will be treated as genuine.

"Unless said purported signer shall appear when cited and deny his signature under oath before said Registrar, or his deputy, or unless the Registrar of Voters shall receive such sworn affidavit of denial of such signature, before the time when by this chapter the said Registrar must, as aforesaid, make such final determination, such signature must be counted as genuine."

Section 3 further provides that upon the completion of his examination and determination of the petition, and supplemental petition, if there be one, the registrar shall attach to the petitions his certificate showing the result of said examination; shall forthwith mail a copy thereof to the persons who filed the petitions, and that if he finds that the original petition, or the original and supplemental petition, as the case may be, contains sufficient legal signatures to require an election to be held thereon, he shall report such sufficiency to the board of election commissioners and exhibit to them such certificates.

With regard to the jurisdiction of the superior court to entertain prohibition against the registrar to prevent him from certifying the result of his completed examination of a recall petition, it is immaterial whether the functions of the registrar in determining the sufficiency of such petition are judicial or ministerial in character. If they are judicial, the charter gives him the power to make the examination and to

certify his determination thereon, and in so doing the registrar does not act without jurisdiction, or exceed his jurisdiction, but acts wholly within and in accordance with the powers conferred upon him. Prohibition lies to arrest the proceedings of a tribunal, board, or person only ''when such proceedings are without, or in excess of the jurisdiction'' of such tribunal, board, or person. (Code Civ. Proc., sec. 1102.) If his duty in that behalf is only ministerial, it is well settled that prohibition is not the proper remedy to stay the action of a ministerial officer. Section 1102, as amended in 1881, [Stats. 1881, p. 20], purports to authorize prohibition against ministerial acts, but it has long been settled that jurisdiction in prohibition is, by the constitution, limited to the arrest of judicial proceedings and does not lie to an officer or board exercising purely ministerial functions; that the legislature cannot enlarge that jurisdiction, and hence that the amendment of 1881 purporting to confer that jurisdiction is invalid. (*Camron* v. *Kenfield,* 57 Cal. 550; *Farmers' Union* v. *Thresher,* 62 Cal. 410; *Hobart* v. *Tillson,* 66 Cal. 211, [5 Pac. 83].) In either alternative, therefore, the superior court was without jurisdiction to entertain the proceeding in prohibition to prevent the registrar from certifying the result of his examination, or from reporting the same to the election board, and the alternative writ issued to that effect is void, and does not constitute a defense to the present application for a writ of mandate.

It is proper to say here, with reference to the question of jurisdiction of both kinds, in prohibition and to enjoin, that we have before us no charge of fraud or willful misconduct on the part of the registrar himself. The question whether or not, if he fraudulently attempted to certify that a recall petition was sufficient when, on its face, it lacked the number of signatures required, or was otherwise fatally defective and insufficient, he could be prohibited or enjoined from so doing, is not presented, and we express no opinion upon it.

We now come to the question whether the superior court has jurisdiction to enjoin proceedings upon a recall petition which is sufficient upon its face, on the ground that it has been made to appear so by means of forged signatures of registered voters, or on the ground that the solicitors who circulated it were not qualified voters, or that the signers to the petition did not sign in the presence of such solicitors.

The constitution confers upon the city and county of San Francisco "plenary authority," subject only to the restrictions contained in article XI thereof, to provide in its charter for the "recall and removal" of all officers of said city and county. (Art. XI, sec. 8½, par. 4.) It follows, therefore, that it is competent for the charter to provide that the question of the sufficiency of a recall petition, or of the legality or regularity of other proceedings in relation thereto, shall be determined by an officer specially authorized to do so, and to exclude the superior court from revising or annulling such determination. (See *Carter* v. *Superior Court,* 138 Cal. 150, [70 Pac. 1067].) Any person who is elected or appointed to an office is presumed to accept the same with the condition annexed that his tenure of the office may be terminated at any time in the manner prescribed by the charter. (*Matter of Carter,* 141 Cal. 320, [74 Pac. 997].) It must be conceded that if the superior court has jurisdiction, the officer against whom a recall petition is launched has a sufficient personal interest to entitle him to maintain an action in equity, upon good cause, to enjoin proceedings upon such recall. Although he cannot claim exemption from such removal by recall, he has the right to demand that the proceedings therein do not substantially depart from the mode prescribed, and to insist that the officers do not perpetrate a fraud upon him by acting upon a fictitious petition supported by forged signatures. (*Matter of Carter, supra.*) A bill in equity to restrain the proceedings so attempted would seem to be an appropriate remedy to prevent the wrong, if no other tribunal is authorized to do so by the charter.

In discussing the question whether such provisions of a charter or statute are exclusive of the jurisdiction of superior courts in *quo warranto,* or in proceedings to contest an election, Mr. Dillon says that the answer must depend upon the language in which the provisions are couched, and that "where the legislative intent is clear that the action of the council in contested election cases shall be final, the court will not inquire into election frauds, since the council is the judge of this matter, as of others pertaining to the election." (1 Dillon on Municipal Corporations, 5th ed., sec. 381.) It is obvious that the same principle must apply where the question is whether the superior court retains power to enjoin the holding of such election on account of frauds in proceedings

relating to it. The decisions of the courts are not harmonious with respect to the language which will operate to take away the jurisdiction of courts in such matters, some holding that a provision that the council shall be "the judge of the election and qualifications" of its members is sufficient to oust the jurisdiction of courts, and others holding the contrary, but all agree that if the provision is that the council shall be the *final* judge of such election and qualifications, or words to that effect, no other tribunal can inquire into the matter. (1 Dillon on Municipal Corporations, 5th ed., sec. 377, and notes.)

Upon consideration of the several provisions of the charter of San Francisco, relating to recall petitions, we are satisfied that the intention was to make the registrar the exclusive judge of the sufficiency of such petitions in all particulars, and to exclude the courts from inquiry concerning them. One of the provisions above quoted is that "unless and until it be proven otherwise by official investigation by the registrar of voters, it shall be presumed that the petition filed conforms to all legal requirements, and contains the signatures of the requisite number of registered voters." This necessarily implies that the registrar has exclusive power to investigate and determine that the presumption is removed, for it declares that such presumption continues until he has so determined. The subsequent provision in section 3, that within the time specified "the registrar of voters shall *finally determine* from the records of registration whether or not said petition is signed by the requisite number of electors entitled to vote," must be read in connection with the preceding section relating to the same subject. Though not well expressed, its meaning is that the registrar must complete his investigations as to the conformity of the petition to legal requirements, and as to the number of lawful signatures, and thereupon, and within the fifteen days allowed, finally determine both propositions, and that his decision is final. If this be its meaning, it excludes jurisdiction of any other court or tribunal to inquire into those questions. The phrase "from the records of registration" following the words "finally determined" in the last passage must be taken with some qualification. The passage is immediately followed by the provision that if any signature is called in question the registrar must mail notice to the purported signer, appointing a time for hearing him, and that the registrar may take the

evidence or affidavit of such voter on the subject. But that the registrar's decision upon such evidence as he may take is to be final upon both propositions, that is, whether the petition conforms to all legal requirements, and whether it contains sufficient genuine signatures, is evident.

The district attorney insists, however, and in this he is supported by the registrar himself, that the charter does not authorize the registrar to take or consider any evidence, or facts, not disclosed on the face of the recall petition and the records of registration, except the testimony or affidavits of the voters to whom he has·mailed the notices as above mentioned. From this he argues that the charter provides no tribunal empowered to inquire into and determine as to forgeries and extrinsic frauds in contravention or evasion of the safeguards prescribed to prevent them, and sufficient upon the general principles of law and equity to nullify the proceedings, and, consequently, that as to such extrinsic frauds, the jurisdiction of equity to prevent injurious fraud remains unimpaired. We do not think the powers of the registrar in this inquiry are so narrow and perfunctory as is thus claimed. He is required to make an official investigation to determine whether or not the petition conforms to "all legal requirements." Among these requirements are that no person not a qualified and registered voter has the right to sign the petition; that such voter must make his signature to the petition in the presence of the solicitor; that no person who is not a qualified voter is competent to solicit signatures, or to make affidavit verifying the same, and that "all signing not made, numbered, and verified substantially in accordance with the requirements" shall be disregarded. The term "registered voter" is defined to mean a qualified voter whose name appears on the records of registration for the current or preceding year. If some of these requirements are wanting as to any signatures to the petition, such signatures should not be counted. If the entire petition, or some sections thereof, are merely fictitious creations by means of clever forgeries, gotten up by persons not authorized to do so, the registrar, upon ascertaining the fact, is authorized to reject or disregard them. He must have authority to inquire into it and to take such evidence as he can obtain in the brief time allowed him for investigation. His powers furnish some protection against frauds and forgeries. They may not be as complete or efficient as those of a court of equity, but the

time must of necessity be short in order to give the recall proceeding any practical value, and a tribunal with this summary jurisdiction is all that the conditions were deemed to allow. A tribunal is provided, and the incumbent has, by taking the office, impliedly agreed to abide by its decisions. With respect to the genuineness of the signatures, the inquiry is limited to the method prescribed in section 3, that is, to call in the voter himself to state the fact, or to admit the genuineness by his absence or failure to deny the same. We do not agree that the registrar is the only person authorized to "call in question" a signature. The charter does not so declare. The officer who is to be subjected to the ordeal is vitally interested, and he, at least, is entitled to have the voter notified. The mode provided, thus liberally construed, is perhaps as just and as efficient to prevent forgery as any that could be devised. We need not here determine whether other registered voters may not also have the right to call signatures in question. The question is not raised. There is therefore a tribunal empowered to determine these matters, and as the language of the charter makes his jurisdiction exclusive, the superior courts have no power to interfere.

The facts that the registrar may have been mistaken as to his duty, and that he has not properly performed it, do not affect the question of his jurisdiction and power, and they are not material to that question.

The decision of the supreme court of Oregon, in *State* v. *Olcott,* 62 Or. 277, [125 Pac. 303], cited in behalf of the district attorney, has no proper application to this case. The statute of Oregon expressly authorized an action in equity to enjoin the fraudulent referendum proceedings there involved, and it did not empower any other tribunal or person to investigate or determine as to the sufficiency, validity, or authenticity of the petition and signatures, except by the purely mechanical process of counting the names.

Our conclusion is that the writ of prohibition and the restraining order issued by the superior court are invalid and of no force to prevent the registrar from making and exhibiting to the election board his certificate of the result of his examination.

Let a peremptory writ of mandate issue as prayed for.

Sloss, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.