[Civ. No. 3519. First Appellate District, Division Two.—July 14, 1920.]

## L. C. FRASER, Petitioner, v. L. W. CUMMINGS, as City Clerk, etc., Respondent.

[1] ELECTIONS—RECALL OF CITY COMMISSIONER—SUFFICIENCY OF VERIFICATION.—Individual certificates contained in a petition for the recall of a city commissioner, if not verified by the true signature of a regularly appointed and qualified verification deputy, are invalid.

[2] ID.—SUFFICIENCY OF PETITION—MANDAMUS TO COMPEL CERTIFICATION—BURDEN OF PROOF.—In a proceeding in *mandamus* to compel a city clerk to certify a petition for the recall of a city commissioner, the burden being upon the petitioner to show the sufficiency of the petition, the determination of the city clerk that some of the certificates were invalid because of defective verification cannot be disturbed if the certificates are not before the court.

[3] ID.—OAKLAND—ELECTION OF MAYOR AT PRIMARY ELECTION—BASIS FOR DETERMINATION OF SIGNATURES REQUIRED.—Under the amendment to section 7, subdivision 2, of the charter of the city of Oakland, which provides that any candidate at the primary election who receives a majority of all the votes cast for all candidates for any particular office should be deemed elected to that office, otherwise the election should be deemed to be a nominating election only, where the mayor of that city was elected at the last preceding primary election, the vote at that election forms the basis for determining the number of signatures required on a recall petition.

[4] ID.—FAILURE TO SIGN FULL NAME—VALIDITY OF CERTIFICATES.—Recall petitions should not be rejected upon the sole ground that the signers did not sign their full names but used one or more initials, if the signature used is sufficient to identify the signer and is otherwise unobjectionable.

[5] ID.—SUFFICIENCY OF PETITION—FAILURE TO LOCATE RESIDENCE—JURISDICTION OF CLERK TO DETERMINE—REVIEW BY COURTS.—The people of the city of Oakland having by their charter conferred upon the city clerk the exclusive power to finally determine whether a recall petition conforms to all requirements of the charter, the determination of the clerk that certain individual certificates contained in a recall petition are insufficient because the signers failed to indicate the streets between which the signer resided, as required by the form of certificate prescribed by the charter, although the signer did show his street address, is not

subject to review by the courts, there being no showing of fraud
or such an abuse of discretion as would indicate that no discre-
tion was exercised.

PROCEEDING in Mandamus to compel a city clerk to
certify a recall petition. Petition denied and alternative
writ discharged.

The facts are stated in the opinion of the court.

De Lancey C. Smith for Petitioner.

H. L. Hagan, City Attorney, and T. J. Ledwich, Deputy
City Attorney, for Respondent.

NOURSE, J.—This is an original proceeding in *manda-
mus*. The petition alleges that on the 19th of May, 1920,
the petitioner filed with respondent, as city clerk of the city
of Oakland, a petition for the recall of a commissioner of
said city containing something over 10,000 individual certifi-
cates, and that respondent, within the time prescribed by
the municipal charter, examined said certificates, and, on
the 29th of May, determined that they were insufficient to
constitute a recall petition. Of the certificates so filed
it is alleged that the clerk found 4,364 defective solely
because the signers thereof failed to name the streets be-
tween which they resided; that others were found defective
because the verification deputy used his initials only in
signing his name to the verification; that others were found
defective on both of these grounds; and that a small number
were found defective because the signers thereof did not sign
their names in full as they appear on the records of regis-
tration. The truth of the foregoing facts is admitted in the
return except as to the certificates rejected because of de-
fective verification. As to these the return alleges that the
verification deputy in each case "signed by a different
name, or in a different manner, or with a different signature
than that of any regularly appointed and qualified verifica-
tion deputy." These allegations of the return were not
controverted by proof or otherwise by petitioner as he might
do. (Sec. 1091, Code Civ. Proc.) [1] Of course, if the
certificates are not verified by the true signature of a regu-
larly appointed and qualified verification deputy, they are

invalid. [2] The certificates are not before the court, and it is impossible to determine what number were rejected for that reason. The burden being upon petitioner to show the sufficiency of the petition, the determination of the clerk that some of the certificates were invalid because of defective verification cannot be disturbed.

[3] Another issue is raised by the pleadings which is, however, a pure question of law. That is whether the number of signatures required should be estimated on the basis of the total vote cast for all candidates for the office of mayor at the last preceding general municipal election at which a mayor was elected, as provided by section 7, subdivision 2, of the charter, or whether the vote cast at the last preceding primary municipal election at which a mayor was elected should form the basis. The controversy arises because after section 7, subdivision 2, was enacted the charter was amended to provide that any candidate at the primary election who received a majority of all the votes cast for all candidates for any particular office should be deemed elected to that office, otherwise the election should be deemed to be a nominating election only. Acting upon the theory that votes cast at the last preceding general municipal election should form the basis of estimate, the city clerk determined that 6,475 signatures were necessary. Upon the basis of votes at the last preceding primary but 5,318 signatures would be required. It is undisputed that the last preceding municipal election at which a mayor was elected in the city of Oakland was that held in 1917 and generally designated as a primary or nominating election. The successful candidate having received a majority of all the votes cast at said election for all candidates for the office of mayor was declared elected. If he had not received such a majority the election would have been deemed a nominating election and the two highest candidates would have been required to run again at a second or final election. (Sec. 5, subd. 21, Charter.) Having been elected, the clear inference is that as to him it was a final election, and hence the "last preceding general municipal election at which a mayor was elected" within the terms of section 7, subdivision 2. The vote at that election should, therefore, form the basis for the number of signatures to the petition presented.

[4] The petitions which were rejected upon the sole ground that the signers did not sign their full names but used one or more initials should have been counted, if the signature used was sufficient to identify the signer and was otherwise unobjectionable. It is not necessary that an elector in signing a petition should use his full name as it appears upon the records of registration. He may sign with his usual signature or use his initials. (*Opinion of Justices,* 116 Me. 557, [103 Atl. 761]; *Conn* v. *City Council,* 17 Cal. App. 705, 713, [121 Pac. 714, 719].)

[5] The petition would have contained a sufficient number of signatures if those signatures which failed to indicate the streets between which the signer resided had been counted. The controversy over these certificates arises from the fact that in the form of the certificate prescribed by the charter the following appears: ''I reside at No. —— street, between —— street and —— street.'' On more than one-half of the certificates filed the signer, though filling in the blank showing his street address, failed to fill the other blanks showing between which streets he resided. The charter provides that the certificates shall substantially follow the form prescribed. The respondent ruled that these certificates did not substantially comply with the form prescribed and rejected them for that reason. It may well be said that this provision is for the aid of the clerk only and that, if satisfied with the genuineness of the signatures, he might have counted them, waiving the technical defect in the form. (*Conn* v. *City Council,* 17 Cal. App. 705, [121 Pac. 714, 719]; *Osborn* v. *Board of Supervisors,* 27 Cal. App. 85, [148 Pac. 970].) On the other hand, it should be borne in mind that the charter prescribes the same form for other certificates, such as those for the nomination of candidates for office (sec. 5, subd. 3), the initiative (sec. 163), the referendum (sec. 181), as well as the recall (sec. 7, subd. 3). Ordinarily, such a petition or certificate is required to indicate the voting precinct of the signer in addition to his home address, and a petition failing in that respect has been held insufficient. (*Thompson* v. *Vaughan,* 192 Mich. 512, [159 N. W. 65, 69]. See, also, *In re Referendum Petitions,* 78 Okl. 47, [186 Pac. 485, 487].)

But in any event it is the clerk and not the court which must determine whether the certificates substantially comply

with the requirements of the charter. By the provisions of subdivision 4 of section 7 of the charter the clerk is directed to examine the petition "to ascertain whether or not it conforms to *all* the requirements of this charter." This examination must be commenced immediately upon the presentation of the petition and "within ten days after such presentation he *must finally determine* whether or not it so conforms and shall forthwith attach to said petition his certificate showing the result of his examination."

In a similar case our supreme court has said that the power conferred upon the registrar of voters by the San Francisco charter to finally determine whether the petition is signed by the requisite number of voters means that he "must complete his investigations as to the conformity of the petition to legal requirements, and as to the number of lawful signatures, and thereupon . . . finally determine both propositions, *and that his decision is final.*" (*Baines* v. *Zemansky,* 176 Cal. 369, 378, [168 Pac. 565, 569].) And again in the same case (176 Cal. 379, [168 Pac. 570]) the court say: "But that the registrar's decision upon such evidence as he may take is to be final upon both propositions, that is, whether the petition conforms to all legal requirements, and whether it contains sufficient genuine signatures, is evident." To the same effect is *Watts* v. *Superior Court,* 36 Cal. App. 692, 697, [173 Pac. 183].

In *Fickert* v. *Zemansky,* 176 Cal. 443, 446, [168 Pac. 891] the supreme court say: "Unquestionably the registrar is required to examine these affidavits as well as the several sections of the petition, to ascertain whether or not they conform to the legal requirements of the charter. The time allowed is very short, and his inquiry must necessarily be of a summary character. The extent of the inquiry and the nature of the other evidence he may take in respect to these matters are not specified. The subject is left to his discretion."

Where the city clerk refuses to act as required by the charter or where there is a showing of such an abuse of discretion as would indicate that no discretion was exercised, the courts may by *mandamus* compel the clerk to perform his duty under the charter. But here the showing is that the clerk did perform his duty and if, in the exercise of that duty, he reached a different conclusion from what this court

might reach on the question of the necessity of showing the cross-streets, this court has no jurisdiction to substitute its judgment for his. In other words, the people of the city of Oakland have in their charter conferred upon the city clerk the exclusive power to finally determine whether a recall petition conforms to all requirements of the charter and they have thereby denied to the courts the power of reviewing such determination in a proceeding of this kind. It is the function of the courts to interpret the law as they find it and to leave to the municipal officers the duty of executing the law as enacted. Where the people have conferred upon a ministerial officer an exclusive power to determine for them a certain fact it is not the province of the courts to substitute their judgment for that of the officer so chosen. To do so would be to set aside the plain dictates of the law. What might be done in a case where fraud is shown need not be determined because the petition here does not pretend to allege any fraud on the part of the clerk.

For the reasons given the petition is denied and the alternative writ discharged.

Brittain, J., and Richards, J., *pro tem.*, concurred.