[No. B118068. Second Dist., Div. Three. Jan. 22, 1999.]

REO BROADCASTING CONSULTANTS et al., Plaintiffs and
Appellants, v.
MICHELLE EDITH MARTIN, Defendant and Respondent.

**COUNSEL**

Cheryl L. Hodgson for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Diane L. Faber and Tanya C. Greig for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—Plaintiffs REO Broadcasting Consultants (REO), Richard E. Oppenheimer (Oppenheimer), and Gilbert A. Cabot (Cabot) (collectively plaintiffs) sued defendant Michelle Edith Martin, also known as Michelle Wright (defendant), in superior court for breach of a contract whereby Cabot, through REO, a partnership composed of Cabot and Oppenheimer, was to render marketing and career consulting services to defendant, a country-western singer. In response, defendant filed a "petition to determine controversy" with the Labor Commissioner (the Commissioner), pursuant to Labor Code section 1700 et seq.,[1] and filed a motion to stay the superior court action pending a determination by the Commissioner, which motion was granted.

The Commissioner issued a ruling voiding the contract in question. Plaintiffs failed to file a timely notice of appeal from the Commissioner's determination, which therefore became final. Defendant then moved to dismiss the superior court action, and plaintiffs moved for leave to file an amended complaint which would allege, in addition to the existing breach of contract claim against defendant, a cause of action for declaratory relief in the form of a declaration that the Labor Code was unconstitutional as applied to the facts of plaintiffs' case, and which added the Commissioner as a party. Defendant's motion was granted, and plaintiffs' motion for leave to file their amended complaint was "vacated." Plaintiffs appeal. Because filing a timely notice of appeal from the Commissioner's final determination is jurisdictional, and such requirement cannot be disregarded even on the grounds of the appellant's excusable neglect which resulted in the belated filing (*Pressler* v. *Donald L. Bren Co.* (1982) 32 Cal.3d 831, 836 [187 Cal.Rptr. 449, 654 P.2d 219] (*Pressler*)), we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff REO is a partnership comprised of plaintiff Oppenheimer and plaintiff Cabot. Defendant is a country-western singer.

[1]All statutory references are to the Labor Code unless otherwise indicated.

[2]All facts related to the timeliness of plaintiffs' notice of appeal from the Commissioner's determination are taken from the parties' joint appendix, and are the facts considered by the trial court in making its decision that plaintiffs' notice of appeal was not timely filed. All facts related to the alleged basis for plaintiffs' superior court action against defendant are taken from the allegations of that complaint.

On or about June 21, 1994, Cabot, on behalf of REO, entered into a written agreement with defendant whereby Cabot was to participate through REO as a career consultant to defendant, and Cabot, through REO, was to receive specific percentages of defendant's gross annual earnings.

Cabot and REO allegedly performed their contractual obligations, and expended time, money and efforts in doing so. However, on September 30, 1994, defendant sent Cabot a letter telling him (1) to stop all actions and dealings on her behalf, and (2) effective immediately, their association was terminated. Defendant refused to make any payments under the agreement to either REO or Cabot.

On May 3, 1996, plaintiffs filed a complaint against defendant containing the above noted allegations. On June 7, 1996, defendant filed with Division of Labor Standards Enforcement (DLSE) a "petition to determine controversy and to void agreement" (the petition), alleging in relevant part that plaintiffs were not licensed as talent agents at any time relevant to their claims. On June 10, 1996, defendant filed in the superior court action a notice of motion and a motion for stay pending determination by the Commissioner of the petition. Although plaintiffs opposed it, the motion to stay was granted.

Plaintiffs then challenged the Commissioner's jurisdiction to consider the petition on the ground that the petition was untimely pursuant to section 1700.44, subdivision (c), but the Commissioner found that the action was not barred by that section. Plaintiffs then made an "emergency request for order to comply with ruling and stay of proceeding by Labor Commissioner" to the superior court, alleging (apparently inaccurately) that the Commissioner had refused to respond to their challenge to jurisdiction. Defendant opposed this "emergency request" and sought sanctions. Based on the record before us, it appears that the emergency request was not granted.

Thomas S. Kerrigan, serving as special hearing officer for the Commissioner, considered defendant's petition, and concluded that all contracts between defendant and plaintiffs were void and unenforceable, and the special hearing officer's determination of controversy was adopted by the DLSE on June 25, 1997. The determination of controversy reserved only one issue: the amount of money damages to be awarded to defendant, and set a hearing to determine such damages for August 12, 1997. Defendant thereafter waived her right to damages, the special hearing officer then vacated the scheduled August 12, 1997, hearing, and issued a final determination, entitled "Order Re: Further Proceedings," on July 10, 1997 (the final determination). The final determination provided, in relevant part, "Proceedings in this matter are concluded for all purposes."

The final determination was served by mail by an employee of the DLSE on plaintiffs' and defendant's attorneys on July 10, 1997. As explained below, plaintiffs had 15 days within which to file a notice of appeal to obtain a de novo review of this determination by the superior court, i.e., until July 24, 1997. On or about July 31, 1997, plaintiffs filed a "request for trial de novo" with the superior court, i.e., an appeal from the final determination.

On November 5, 1997, defendant filed a motion to dismiss plaintiffs' appeal as untimely and to dismiss plaintiffs' entire action. The superior court granted the motion.[3] Plaintiffs filed a notice of appeal from this ruling on December 5, 1997.

## CONTENTIONS ON APPEAL

Plaintiffs contend that (1) their failure to file a timely notice of appeal from the Commissioner's determination should be subject to an excusable neglect" standard and that the evidence here clearly shows "excusable neglect; (2) the evidence also shows constructive receipt of their notice of appeal by the court clerk on July 24, 1997 (which plaintiffs assume would have been timely receipt); (3) the Commissioner was required to serve the final determination by certified, not first class, mail (and therefore, implicitly, the time for filing the notice of appeal did not begin to run); and (4) plaintiffs have standing to challenge the constitutionality of the Talent Agencies Act as applied to their contract with defendant, and therefore they should have been allowed to amend their complaint to add a cause of action challenging the act's constitutionality.

Defendant disputes each of these contentions.

## DISCUSSION

1. *Section 1700.44 Requires an Aggrieved Party to File a Notice of Appeal Within 10 Days After Service of Notice of the Commissioner's Final Determination, Unless Extended*

■ The Talent Agencies Act (§§ 1700-1700.47)[4] is a remedial statute designed to protect those seeking employment. (*Buchwald* v. *Superior Court* (1967) 254 Cal.App.2d 347, 350 [62 Cal.Rptr. 364].) The Commissioner has the authority to hear and determine various disputes, *including the validity of artists' manager-artist contracts and the liability of the parties thereunder.* (*Id.* at p. 357.) The reference of disputes involving the act to the

---

[3]See footnote 2, *ante.*
[4]The Talent Agencies Act was formerly known as the Artists' Managers Act.

Commissioner is *mandatory*. (*Id.* at p. 358.) Disputes *must* be heard by the Commissioner, and all remedies before the Commissioner *must* be exhausted before the parties can proceed to the superior court. (*Ibid.*)

Once the parties have exhausted their administrative remedies, section 1700.44 confers upon any party aggrieved by a determination of the Commissioner the right to a trial de novo in the superior court *provided he or she notices the appeal within 10 days.* (§ 1700.44 ["In cases of controversy arising under this chapter, the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo."]; *Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376]; *Buchwald* v. *Superior Court, supra,* 254 Cal.App.2d at p. 359.) While section 1700.44 does not explicitly state when this 10-day period begins to run, case law has established that it begins to run after service of notice of the determination. (*Sinnamon* v. *McKay* (1983) 142 Cal.App.3d 847, 852-854 [191 Cal.Rptr. 295].)[5]

The 10-day time limit for taking an appeal from a decision of the Commissioner is "mandatory and jurisdictional," and the superior court *cannot* consider an appeal taken after the expiration of the statutory period even if the appeal is late because of mistake, inadvertence or other excuse. (*Pressler, supra,* 32 Cal.3d at p. 836.)

In *Pressler, supra,* 32 Cal.3d 831, Pressler, a real estate salesman, filed an action with the Commissioner to recover the unpaid portion of commissions allegedly owed to him. Following an administrative hearing, the Commissioner awarded Pressler his full commissions, and a copy of the decision was mailed to the parties. Although section 98.2, subdivision (a), provided that a party seeking a de novo review of such an award must file a notice of appeal within 10 days following service of notice of the award, the defendant did not file the notice until 13 days after that date. Pressler moved to dismiss the appeal, claiming the superior court did not have jurisdiction to hear the case

---

[5]The parties have assumed that this 10-day period is extended by Code of Civil Procedure section 1013, subdivision (a), which gives a party an additional 5 days "to do any act . . . within any period or on a date certain after the service of the document [by mail] . . . if the place of address is within the State of California." Code of Civil Procedure section 1013 expressly does not extend the time within which a notice of appeal must be filed. However, section 98.2, which provides general procedural rules governing the construction of the Labor Code (§ 5), states that the 10-day period for filing appeals after service of an order, decision or award by the Commissioner, shall be extended by 5 days if service was by mail, because "Section 1013 of the Code of Civil procedure shall be applicable." Therefore, plaintiffs had 15 days, instead of 10, within which to file their notice of appeal, i.e., until July 24, 1997.

because the notice of appeal was not timely filed. The defendant opposed the motion, arguing that, under Code of Civil Procedure section 473, the court could allow the late notice of appeal. The court rejected this claim and granted the motion to dismiss.

The defendant's reliance on Code of Civil Procedure section 473 was based on his contention that the notice of appeal was filed late due to a clerical error: that the notice of appeal was prepared on August 18 and was timely sent to Pressler and the Commissioner, but that the original notice, plus the filing fee, mistakenly was not mailed to the court until August 26, and thus was not filed on time.

The California Supreme affirmed the trial court's dismissal of defendant's appeal. It held that the 10-day time limit for taking an appeal from a decision of the Commissioner is "mandatory and jurisdictional," and that a court *cannot* consider an appeal taken after the expiration of the statutory period even if the appeal is late because of mistake, inadvertence or other excuse. (*Pressler, supra*, 32 Cal.3d at p. 837.) In addition, the California Supreme Court noted that the defendant in *Pressler* was not entitled to relief under Code of Civil Procedure section 473 in any event, because a party's own default in failing to timely file a notice of appeal is not " 'a "proceeding taken against" [the party] within the meaning of section 473. [Citation.]' [Citation.]" (32 Cal.3d at p. 834, fn. 5.) Finally, the court observed that granting relief under Code of Civil Procedure section 473 would undercut the legislative purpose—and public policy—of assuring the expeditious collection of wages which are due but unpaid. (32 Cal.3d at p. 837.)

While it is true that *Pressler* did not involve an administrative proceeding under the Talent Agencies Act (Former §§ 1700-1700.47), and instead involved an administrative proceeding before the Commissioner in which a real estate salesman attempted to recover unpaid sales commissions, plaintiffs have provided no logical reason why the general holding in *Pressler* as to the timeliness of an appeal from a final determination by the Commissioner is not equally applicable to *any* kind of administrative proceeding held before the Commissioner, nor can they, in light of the *Pressler* court's comments that: "Historically, the courts have not hesitated to apply the rules governing conventional appeals to appeals in which a trial de novo is required[] [citations]" and "[t]he timely filing of the notice of appeal (1) forestalls the finality of the Labor Commissioner's decision; (2) terminates the jurisdiction of the Labor Commissioner; and (3) vests jurisdiction to conduct a trial de novo in the appropriate court." (32 Cal.3d at p. 836.)

*2. There Is Substantial Evidence to Support the Trial Court's Ruling. Furthermore, Under Pressler, the Superior Court Had No Power to Consider a Late Notice of Appeal, Even If It Were Late Due to Mistake, Inadvertence or Other Excuse*

■ Whether a notice of appeal was, in fact, timely filed is a question of fact to be determined by the trier of fact, in this case, the trial court. (*Glasser v. Glasser* (1998) 64 Cal.App.4th 1004, 1010-1011 [75 Cal.Rptr.2d 621].) ■ The timeliness within which a notice of appeal from a decision of the Commissioner has been filed depends, of course, on the date upon which the Commissioner's final determination was mailed to the parties. Here, the uncontroverted evidence showed that the final determination was served by first class mail, mailed within the State of California, on both plaintiffs and defendant on July 10, 1997, a Thursday.[6] Pursuant to section 1700.44, plaintiffs had until July 21, 1997, a Monday (Code Civ. Proc., § 12), within which to file their notice of appeal, but did not do so until July 31, 1997.

Plaintiffs raised various arguments about why their notice of appeal was, in fact, late. However, there is a presumption that a letter correctly addressed and properly mailed has been received in the ordinary course of mail. (Evid. Code, § 641.) The evidence presented to the trial court included evidence

---

[6]Plaintiffs make a rather incoherent argument that notice of the final determination here should have been mailed by certified mail, based on the provision in section 1700.44, subdivision (a) which provides, in relevant part: "The Labor Commissioner may certify without a hearing that there is no controversy within the meaning of this section if he or she has by investigation established that there is no dispute as to the amount of the fee due. Service of the certification shall be made upon all parties concerned by registered or certified mail with return receipt requested and the certification shall become conclusive 10 days after the date of mailing if no objection has been filed with the Labor Commissioner during that period."

However, section 1700.44, subdivision (a)'s provision for use of certified mail applies only to cases in which the Commissioner "certif[ies] *without a hearing* that there is no controversy within the meaning of this section if he or she has by investigation established that there is no dispute *as to the amount of the fee due.*" (Italics added.) That is *not* what happened here: there was a hearing, the special hearing officer determined that plaintiffs were not properly licensed talent agents within the meaning of the Talent Agencies Act, and therefore their contracts with defendant were void ab initio and unenforceable.

It makes sense that, when the Commissioner issues a determination without a hearing, a more formal form of notice be used, e.g., certified mail, given that the parties have not been as actively involved in the decisionmaking process as parties who have participated in a hearing. Certified mail offers (1) a method likely to gain a party's attention; (2) reliable delivery procedures reasonably capable of reaching the named party; (3) verification of receipt of mailing; (4) verification of the date and place received; and (4) efficiency in terms of time needed to determine whether the method actually provided notice. (Note, *Rule 4: Service by Mail May Cost You More Than a Stamp* (1986) 61 Ind. L.J. 217, 242-243.) However, when, as here, there was a hearing, the same kind of first class, mailed notice as is used in connection with similar proceedings is appropriate. (See, e.g., § 98.1, subd. (a).)

that defendant's attorney received the final determination on July 11, 1997—one day after it was mailed. Although plaintiffs offered evidence that their attorney was in a car accident which kept him from his office for three weeks, and that all his mail after July 12, 1997, was brought to him at home, the attorney failed to state what happened to the mail delivered to his office on July 11, 1997 (the same day the final determination was delivered to defendant's attorney). The totality of the evidence was such that the trial court reasonably could have inferred that, in fact, no notice of appeal was timely filed by plaintiffs because, although the final determination had, in fact, been received by plaintiffs' attorney's office, it was then ignored, overlooked, or misplaced. Thus, even if we were to assume, as asserted by plaintiffs, that there was some evidence of excusable neglect, nonetheless we would be bound by the substantial evidence to the contrary which supports the trial court's determination that plaintiffs received the final determination, but did not file timely notice of appeal.[7]

More to the point, however, the trial court, even if it had found excusable neglect, had no power to consider a late appeal. (*Pressler, supra,* 32 Cal.3d at p. 836.) Plaintiffs' reliance on *Hardy* v. *Western Landscape Construction* (1983) 141 Cal.App.3d 1015, 1017 [190 Cal.Rptr. 766] and California Rules of Court, rule 1615(d) for the proposition that excusable neglect is now grounds for accepting an untimely appeal is misplaced; *Hardy* and rule 1615(d) both apply to requests for trial de novo after a nonbinding arbitration award made under the auspices of the superior court, not after a determination by the Commissioner, a separate administrative agency.

[7]Plaintiffs also contend that there is evidence that their request for a trial de novo was "constructively received" by the court clerk on July 24, 1997. This evidence consisted of a declaration by Solveig Bassham, an associate of Cheryl Hodgson, who was not then of record as plaintiffs' attorney in the Labor Commission proceeding. According to Bassham, "because REO anticipated an adverse ruling in the proceeding before the Labor Commissioner, we were prepared to file the Request for Trial De Novo as soon as a ruling was received." Therefore, on July 24, Hodgson asked Bassham to personally deliver "what we had labeled a 'Notice of Appeal' (the Request for Trial De Novo) to the Superior Court for filing, since she was very concerned about preserving plaintiff's right to a fair hearing before the Superior Court, but the Clerk would not accept the document since they did not understand that it was being filed in an existing case. I was sent to the Court Administrator's office and told it would have to be re-titled 'Request for Trial De Novo.' The filing was not accepted that day." Notably, plaintiffs did not attach as an exhibit to this declaration a copy of the document which they had purportedly attempted to file.

A trial court is not bound to accept as true the sworn testimony of a witness even in the absence of evidence contradicting it, and this rule applies to a declaration. (*Warner Bros. Records, Inc.* v. *Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1017, fn. 7 [112 Cal.Rptr. 71].) The fact that plaintiffs did not proffer the document itself for the trial court's perusal as to the reason(s) it was not accepted for filing, in and of itself, would be reason enough for the trial court to reject Bassham's explanation of why the document was not filed. Therefore, the trial court did not err by failing to grant plaintiffs any relief based on their "constructive receipt" theory.

### 3. The Trial Court Did Not Err by Refusing to Allow Plaintiffs to File an Amended Complaint Raising a New Constitutional Issue

Plaintiffs contend that they should have been allowed to amend their complaint to allege a constitutional claim along with their breach of contract cause of action. We disagree.

Plaintiffs' proposed amended complaint contained their existing breach of contract claim against defendant, and simply added a cause of action for declaratory relief that the Labor Code is unconstitutional as applied to the facts of plaintiffs' case and added the Commissioner as a party. Specifically, the proposed amended complaint alleged (1) plaintiffs had standing to challenge the constitutionality of the application of the Labor Code to them based upon the facts pursuant to which the Commissioner had entered its order voiding plaintiffs' agreement with defendant; (2) defendant had lied to the Commissioner with respect to the nature of the services rendered to her by plaintiffs; and (3) the application of section 1700 et seq. to the true facts (which true facts plaintiffs intended to show to the superior court) constituted "a dangerous precedent, in that the result is use of the statute to regulate conduct outside the scope of the jurisdiction of the Labor Code to deprive plaintiffs [of] other lawful remedies before the Superior Court," and threatened "to undermine the very nature and existence of the entire public relations community routinely engaged in the activities used by the Commissioner to avoid plaintiffs' contracts." Based on these allegations, plaintiffs sought a declaration from the superior court that section 1700 et seq. had been unconstitutionally applied to them, thus resulting in a denial of procedural and substantive due process. Notably, the complaint did not allege that the Talent Agencies Act's requirement that plaintiffs file a notice of appeal within 10 days of notice of entry of a final determination by the Commissioner was unconstitutional.

Plaintiffs' motion for leave to file this amended complaint contended that plaintiffs were career and business consultants, that they were not a booking agent nor a talent agency, and that they had not procured employment for defendant. Therefore, plaintiffs asserted, the Commissioner unconstitutionally had applied the Talent Agencies Act to plaintiffs' activities, "since none of the activities cited by the Commissioner in his findings constitute procurement of employment within the meaning of the Talent Agency statute or any known industry custom and practice." According to plaintiffs, the "Labor Commissioner acted in complete disregard of the true facts in reaching an adverse decision to plaintiffs." Plaintiffs therefore argued they had standing to raise the issue of the act's constitutionality as applied to the facts of their case. Notably, plaintiffs' motion also did not attack as unconstitutional the procedural requirements for review of the Commissioner's final determination.

Defendant objected to plaintiffs' ex parte application to shorten time within which plaintiffs could bring their motion for leave to file an amended complaint. Defendant also argued that if defendant's motion to dismiss the plaintiffs' action, which was based on plaintiffs' failure to file a timely request for trial de novo following the Commissioner's final determination, was granted, then plaintiffs' motion for leave to file an amended complaint would really be seeking leave to make a collateral attack on a final decision by the Commissioner, and such attack would be barred by principles of res judicata.

In their opening brief on appeal, plaintiffs only premise their argument that the Talent Agencies Act is unconstitutional as applied to them on their allegations that their conduct did not constitute procurement of employment. Not until their reply brief do plaintiffs contend that "the language of section 1700.44 [related to the time to seek review of the Commissioner's final determination] is so vague that its application in this case operates to deny [plaintiffs] procedural due process."

■ This court will not consider points raised for the first time in a reply brief for the obvious reason that opposing counsel has not been given the opportunity to address those points (*Frankel* v. *Kizer* (1993) 21 Cal.App.4th 743, 747, fn. 4 [26 Cal.Rptr.2d 268]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, pp. 647-648), particularly when the plaintiffs also failed to raise such issue before the trial court. (*Block* v. *Major League Baseball* (1998) 65 Cal.App.4th 538, 545 [76 Cal.Rptr.2d 567].) Therefore, we shall not consider plaintiffs' belatedly raised argument that the procedural requirements of section 1700.44 are unconstitutional.

Plaintiffs are therefore left with only their argument that they should have been allowed to amend their complaint to allege that the Talent Agencies Act is unconstitutional as applied to them, because their conduct did not constitute procurement of employment. We reject this argument, because it necessarily depends for its validity on matters already decided by the Commissioner and plaintiffs failed to seek timely direct review of the Commissioner's decision. As a result, it became final and not subject to collateral attack.

■ In California, when a court or agency acts pursuant to a statute later declared unconstitutional, prior final proceedings based on such a statute are entitled to res judicata effect and are immune from collateral attack. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796-797 [126 Cal.Rptr. 225, 543 P.2d 593]; *Bank of America* v. *Department of Mental Hygiene* (1966) 246 Cal.App.2d 578, 585 [54 Cal.Rptr. 899] and authorities cited therein.) If

reliance on an unconstitutional statute deprived a court or agency of fundamental jurisdiction or somehow made its act one in excess of its statutory powers, the rule barring collateral attack could not apply. (*Miller* v. *Board of Medical Quality Assurance* (1987)193 Cal.App.3d 1371, 1379 [238 Cal.Rptr. 915].) However, where the court or agency had fundamental jurisdiction over the parties and the subject matter, then its determination may ordinarily be attacked only by appeal or other direct review, and unless successfully so attacked, the determination is res judicata of the matter determined, and beyond collateral attack. (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 951 [126 Cal.Rptr. 805, 544 P.2d 941]; *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 732 [13 Cal.Rptr. 104, 361 P.2d 712].)[8] This is so even though the determination be palpably erroneous, for fundamental jurisdiction, " ' "being the power to hear and determine, implies power to decide a question wrong as well as right." ' " (*Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control, supra*, 55 Cal.2d at p. 731.) As stated in *Baines* v. *Zemansky* (1917) 176 Cal. 369, 373 [168 P. 565], "If [the] court has jurisdiction, it may decide the wrong as well as the right in the matter, and its decision is binding on all other persons, officers, and courts, *save upon an appeal to the court having appellate jurisdiction of the cause.*" (Italics added.)

Here, the Commissioner was acting with fundamental jurisdiction when it acted pursuant to the authority of the Talent Agencies Act, even though plaintiffs argued that its interpretation of conduct constituting procurement of employment was clearly erroneous. (See *Miller* v. *Board of Medical Quality Assurance, supra*, 193 Cal.App.3d at p. 1379.) Because plaintiffs failed to file a timely request for a trial de novo, the Commissioner's determination became final, and even a constitutionally based attack on that determination is subject to the legislatively prescribed time limits of section 1700.44. (*Friedland* v. *City of Long Beach* (1998) 62 Cal.App.4th 835, 846-847 [73 Cal.Rptr.2d 427].) Furthermore, plaintiffs could not amend their complaint in their earlier filed civil action to attack the Commissioner's determination that their contract with defendant was unenforceable on the ground that the act was unconstitutional as applied to them, because a collateral attack is proper only to contest lack of personal or subject matter jurisdiction. (*Armstrong* v. *Armstrong, supra*, 15 Cal.3d at p. 950.)

[8]In nearly all California cases wherein the principles of res judicata were applied to decisions of administrative agencies, evidentiary hearings had been held by the agencies, and the parties were provided a reasonable opportunity to appear and present evidence much like at trial before a court. (See discussion and cases cited in *People* v. *Sims* (1982) 32 Cal.3d 468, 477-482 [186 Cal.Rptr. 77, 651 P.2d 321].) Here, the Commissioner held an evidentiary hearing, and plaintiffs had an opportunity to present evidence. Therefore, application of the principles of res judicata to the Commissioner's decision is appropriate.

## Disposition

The order is affirmed. Defendant shall recover her costs on appeal.

Klein, P. J., and Aldrich, J., concurred.