Filed 2/10/15 Genutec Business Solutions v. Danna CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GENUTEC BUSINESS SOLUTIONS, INC., | |
| Plaintiff and Respondent, | G049010 |
| v. | (Super. Ct. No. 07CC07918) |
| LEE DANNA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge. Affirmed.

Lee Danna, in pro. per., for Defendant and Appellant.

Law Offices of M. Candice Bryner and M. Candice Bryner for Plaintiff and Respondent.

Lee Danna appeals from a judgment entered in favor of Genutec Business Solutions, Inc. (Genutec) after a bench trial. The trial court determined Danna, the former chief executive officer and chairman of Genutec's board, breached his fiduciary duty and duty of loyalty to Genutec. It awarded Genutec $6,182,036 in compensatory damages and $1 million in punitive damages. On appeal, Danna contends there was insufficient evidence to support the judgment with respect to all causes of action as well as the punitive damage award. He also maintains the court made erroneous evidentiary rulings and was confused. Finding his arguments lack merit, we affirm the judgment.

I

*A. Procedural History*

This is the fourth appeal we have considered from the underlying lawsuit Genutec initiated in 2007 against Danna and several others. In July 2013 we considered Genutec's appeal from a judgment of dismissal entered after the trial court granted a summary judgment motion in favor of Genutec's former attorney, Stephen A. Weiss, a partner at Gersten Savage LLP (referred to collectively and in the singular as Weiss). We affirmed the trial court's determination the one-year statute of limitations set forth in Code of Civil Procedure section 340.6, subdivision (a), barred Genutec's complaint alleging a single cause of action for professional negligence against Weiss. (*Genutec Business Solutions, Inc., v. Stephen A. Weiss et al.* (July 9, 2013, G044744) [nonpub. opn.] (*Genutec I*).)

In January 2014 we considered an appeal and cross-appeal concerning motions for sanctions made under Code of Civil Procedure section 128.7. (*Genutec Business Solutions, Inc., v. Michael Taus et al.* (Jan. 30, 2014, G046062) [nonpub. opn.] (*Genutec II & III*).) Simply stated, former Genutec directors, Michael Taus and Lawnae Hunter, believed there was no basis for Genutec's lawsuit against them and filed a motion for sanctions requesting $1,098,046 against Genutec and its counsel, namely, (1) the Law Offices of Candice Bryner (the Bryner Firm), and (2) Shulman, Hodges & Bastian (the

2

Shulman Firm). In response, Genutec filed a counter motion seeking $51,990 in sanctions on the grounds the Taus/Hunter sanctions motion was filed primarily for an improper purpose. The trial court denied the Taus/Hunter motion for sanctions. It awarded the Bryner Firm $45,000 for attorney fees and costs incurred to successfully oppose the Taus/Hunter motion. The trial court also granted the counter motion, awarding Genutec sanctions of $50,467.50. We affirmed the trial court's orders. (*Genutec II & III, supra,* G046062.)

The factual and procedural background of the underlying lawsuit is described in greater detail in our *Genutec I* opinion and *Genutec II & III* opinion, and we incorporate those factual summaries by reference. (*Genutec I, supra,* G044744; *Genutec II & III, supra,* G046062.) Briefly stated, Genutec is in the business of providing emergency notification and voice broadcasting services. It filed a lawsuit against Danna and several others (who are not parties in this appeal) after the $14 million acquisition of Smart Development Corporation (hereafter SD) caused Genutec to suffer substantial financial losses.

Genutec's operative complaint (its fourth amended complaint) alleged the following causes of action against Danna: (1) breach of fiduciary duty occurring before the SD acquisition (first cause of action); (2) breach of fiduciary duty occurring after the SD acquisition (second and third causes of action); (3) breach of duty of loyalty (fourth cause of action); and (4) breach of contract (sixth cause of action). Genutec dismissed the breach of contract action before trial.

After a 39-day bench trial, the court concluded Danna was liable on all causes of action, and that his misconduct warranted punitive damages. It issued a lengthy statement of decision, which we will discuss in more detail anon. Danna appealed from the judgment awarding $6,182,036 compensatory damage, $2,163,712 in prejudgment interest ($1,185 per day), and $1 million in punitive damages.

3

The court's judgment resolved other disputes not raised in this appeal. It considered Genutec's lawsuit against Taus, Hunter, and former board member, Johan Hendrik Smit Duyzentkunst (referred to as "Smit" by the parties, and thus to avoid confusion and for consistency, we will adopt the same abbreviation, with no disrespect intended) and these three defendants' cross-complaints.

The court ruled Smit was jointly liable with Danna for the $6,182,036 in compensatory damages and Smit would take nothing from his cross-complaint against Genutec. Smit filed an appeal (G049027), but then dismissed it.

Taus and Hunter prevailed on their cross-complaints against Genutec and judgment was entered in their favor with respect to Genutec's lawsuit. The court awarded Taus $29,003 in damages plus costs, and it awarded Hunter $302,346 in damages plus costs. We stayed the appeal and cross-appeal (G049011) arising from this portion of the judgment pending the outcome of Genutec's Chapter 11 bankruptcy proceedings.

This court did not stay Danna's appeal (G049010), the one before us now, because it concerns a judgment in Genutec's *favor*; Genutec, as debtor in possession, may proceed on behalf of this asset of the bankruptcy estate. (*California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 729.)

B.  *Appeal by a Self-Represented Litigant*

In his opening brief, Danna begins by explaining he is a self-represented litigant because his litigation insurance policy reached the maximum limit of $5 million sometime in 2011, his lawyers resigned, and he personally filed Chapter 7 bankruptcy. He does not provide any record references or other evidence to support these factual assertions.

We therefore begin by noting the rules of appellate procedure can sometimes evade even those who have trained for years to be lawyers. But a self-represented litigant is not exempt from the requirements of the law. A

4

self-represented "party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.) Thus, Danna's burden to establish reversible error is not changed or lessened by the fact he is proceeding without an attorney.

Danna's appellate briefs fail to comply with numerous rules of court and appellate procedure. He routinely fails to support his factual assertions with citations to the appellate record. (See Cal. Rules of Court, rule 8.204(a)(1)(C).) He regularly fails to support his legal arguments with cogent analysis that applies legal authority to the facts of his case. (See Cal. Rules of Court, rule 8.204(a)(1)(B); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 [claim on appeal may be denied if unsupported by argument applying legal principles to particular facts of case].) He improperly attempts to incorporate by reference legal arguments he made in the trial court. (See *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 690, fn. 18.) He poses some of his issues on appeal as interrogatories for this court to answer. (See *Green v. City of Los Angeles* (1974) 40 Cal.App.3d 819, 835 (*Green*) [appellate court not required to search record to determine whether or not appellant's claims of error are supported]). Danna also makes new arguments for the first time in his reply brief. (See *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [refusing to entertain argument raised for first time in reply brief].)

While we are generally reluctant to find forfeiture, Danna's briefing in this case is wholly deficient and it falls well short of what we see from other self-represented litigants. Accordingly, we find Danna has forfeited or waived his arguments on appeal. We provide anon illustrations of how the inadequacies and shortcomings of Danna's

briefing fail to provide this court with a basis for review on the merits of any of Danna's appellate claims.

*C. Sufficiency of the Evidence Challenge*

Danna's appeal challenges the sufficiency of the evidence supporting the trial court's liability findings on each cause of action and with respect to punitive damages. "The 'substantial evidence' rule is often misunderstood. It is *not* a question of whether there is 'substantial conflict' in the evidence but, rather, whether the record as a whole demonstrates substantial evidence in support of the appealed judgment or order. [See e.g., *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873 . . .]." (Eisenberg, et al., Cal. Practice Guide, Civil Appeals and Writs (The Rutter Group 2013) § 8:39, p. 8-20.)

"'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) The judgment is presumed to be correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Moreover, we must presume the record contains evidence to sustain every finding of fact. (*Foreman, supra,* 3 Cal.3d at p. 881.) It was Danna's burden to demonstrate that it does not. (*Ibid.*)

It is well settled that to meet this burden, Danna had the duty to fairly summarize all the facts in the light most favorable to the judgment. (*Foreman, supra*, 3 Cal.3d at p. 881.) And, the burden to provide a fair summary of the evidence "grows with the complexity of the record. [Citation.]" (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290.)

The record in this case is very complex. The bench trial lasted 39 days and there were over 1,000 exhibits. However, Danna provided this court with an appellate record containing the reporter's transcript of only 15 days of the bench trial

6

(1,342 pages), omitting the testimony unfavorable to his case (including his own testimony). Danna included only 61 exhibits, 16 of which were never admitted into evidence. Genutec counter-designated the record with a reporter's transcript of the missing days of trial (approximately 5,000 pages). It also transmitted four large notebooks of additional trial exhibits supporting the judgment. Genutec cites to these portions of the record in its respondent's brief, highlighting what evidence supports the judgment.

Despite the enormous size of the record, Danna provided only a brief summary of the trial evidence in his opening brief, and his summary was limited to the facts supporting his defense. His citations to the record are similarly limited to the favorable portions of the record he included in the appellate record. In contrast, Genutec discusses at length the testimony and documentary evidence supporting the judgment that was omitted from Danna's briefing.

By not mentioning or discussing Genutec's evidence, Danna has left it for us to figure out why Genutec's many examples of testimony, documents, and exhibits would not support the court's conclusions. However, we cannot do this. We must presume the record contains evidence to sustain every finding of fact and presume the judgment is correct. (*Foreman, supra,* 3 Cal.3d at p. 881.) A self-represented litigant has the same burden of providing a fair summary of the evidence and present in his appeal a true picture of all the material evidence presented at trial. Danna failed to meet his burden. (*Green, supra,* 40 Cal.App.3d at p. 835 [appellate court not required to search record to determine whether or not appellant's claims of error are supported]).

*i. First Cause of Action*

For example, Danna asserts there was insufficient evidence to support the court's finding he breached his fiduciary duty before the SD acquisition (first cause of action). In a nutshell, Danna claims the evidence proves he was unaware there were any problems with SD's software, he did not interfere with either the technology or legal due

7

diligence conducted before the acquisition, and he did not misrepresent having an exclusive written contract with SD's largest customer (called IRM). These facts are cited under the heading "Elements of the Action." There are several problems with his assertions.

To begin with, Danna fails to discuss the *legal* elements of a breach of fiduciary duty cause of action. The trial court correctly stated in its statement of decision, "All of the events which are material to Genutec's action occurred while Genutec was a Montana corporation. Accordingly, Montana law governs this action." The trial court cited Montana Business Corporation Act (MCA) section 35-1-418 that describes the duties of a corporate officer. Like California, Montana has enacted statutes that codify the duty of care required of a corporate director and its provisions mirror the ABA Model Business Corporation Act. (*Hansen v. 75 Ranch Co.* (1998) 288 Mont. 310, 318 [957 P.2d 32, 37]; See Corp. Code, § 309 [duties of director].) The trial court noted the Montana courts have "decided relatively few cases concerning the MCA" and therefore it found California law and Delaware law instructive.

Montana law requires a director to discharge his or her duties "in good faith" and "with the care of an ordinarily prudent person in a similar position would exercise under similar circumstances." (MCA, § 35-1-418, subd. (1)(a)-(b).) A director must act "in a manner the director reasonably believes to be in the best interests of the corporation." (MCA, § 35-1-418, subd. (1)(c).)

Applying this legal standard, the trial court concluded, "Danna breached his fiduciary duty of due care and good faith to Genutec in the [p]re-[SD] acquisition period as alleged in the [f]irst [c]ause of [a]ction." The trial court made the following factual findings to support this conclusion: "a) [Danna failed] to disclose material facts to the [b]oard of [d]irectors relating to:

"1) the undisclosed status of [SD] software which Genutec was buying from [SD],

8

"2) nondisclosure of problems with the [SD] software (i.e., lack of 'caller [ID]' in the [SD] software,

"3) instructing attorneys to reduce the legal due diligence they should perform related to the [SD] acquisition and not disclosing this to the board of directors prior to the board's decision to acquire [SD],

"4) instructing [Genutec's chief technical officer Mike] Fannin to reduce the technological due diligence related to the [SD] acquisition and not disclosing this to the board of directors prior to the board's decisions to acquire [SD],

"b) [Danna misrepresented] that he had obtained a 'signed' [five-year] exclusive contract . . . ."

Danna neglected to discuss the applicable law or the court's legal conclusions. He does not contend the above five factual findings, if true, could not support the legal conclusion of liability. Instead, Danna focused his argument on appeal on proving the facts are untrue.

Again, in attacking the sufficiency of the evidence Danna discusses only the favorable evidence he presented at trial relating to four of the trial court's five factual findings. Danna appears not to dispute the evidence supporting the trial court's conclusion (number (a)(2)) that he failed to disclose to Genutec's board that SD's dialing system was designed to avoid displaying the customer's actual caller identification when making calls (hereafter referred to as caller ID issue).

Genutec explained in its briefing that, at the time, there were stiff federal penalties for telemarketing companies who violated the caller identification rules. It provided record citations to evidence Smit directly advised Danna about the caller ID issue, they both knew penalties could be "in the million of dollars [*sic*]" and yet Danna replied, "That's great" when told about it. Smit explained Danna knew his customers did not like giving out their true caller identification numbers because lawyers would "go[] after telemarketers who did not comply with the FCC regulations." Genutec presented

9

evidence that after SD's software was installed, Genutec had to make modifications to comply with the federal caller ID requirements.

In the briefing, Genutec points to evidence proving Danna did not report the financially harmful caller ID issue to Genutec's board before they purchased SD. Danna does not assert the trial court could not reasonably rely on this fact alone in concluding Danna breached his fiduciary duty of good faith and due care. He presents no legal argument on this point. It was his burden to prove there was insufficient evidence to support the judgment. Thus, even if we assumed for the sake of argument that he was correct about the other four factual findings, we would still have no reason to disturb the judgment.

We conclude Danna waived his contentions regarding the sufficiency of the evidence supporting the trial court's other four factual findings (numbers (a)(1), (a)(3)-(4) and (b)), by failing to fairly summarize all the facts in the light most favorable to the judgment. (*Foreman, supra*, 3 Cal.3d at p. 881.) For example, with respect to the trial court's factual finding (a)(1) [Danna knew SD's software was unlicensed], Danna asserts the court erred because there was evidence he reasonably relied on the opinions of two legal firms hired to complete due diligence before SD's acquisition. This fact does not rebut the court's factual finding. It does not diminish Genutec's evidence Danna personally knew about the problems with the software because SD's owner (Smit) told him directly the software was "underlicensed" and would have to be re-written after the acquisition. It was reasonable for the court to conclude Danna should have disclosed his knowledge about the licensing problem during Genutec's due diligence rather than waiting to see if the legal firms could uncover the problem on their own. Under the MCA, a director may rely on reports and opinions prepared by others but will not be deemed to be acting in good faith if he or she "has knowledge concerning the matter in question that makes reliance otherwise permitted . . . unwarranted." (MCA, § 35-1-418,

10

subd. (3).)  Danna does not explain why he should be permitted to rely on due diligence reports knowing there is missing or incorrect information.

We recognize Danna refers to two other pieces of evidence in his argument regarding the licensing issue but we conclude those facts do not refute Genutec's evidence Danna knew and failed to disclose the licensing problem.  First, Danna notes SD provided a warranty section in the merger agreement.  Second, he claims exhibit No. 5117, shows Genutec's predecessor company, SMG, "satisfactorily used SD's platform for their overflow volume prior to the closing."  The significance of these facts to the issue at hand is not readily apparent.  The court determined Danna had a duty to disclose issues with SD's software *before* it was purchased by Genutec.  Danna does not explain how his duty to disclose the licensing problem would be excused by SD's false warranties in the *final* purchase agreement.  Similarly, it is unclear how Genutec's prior use of SD's "platform" for "overflow volume" (whatever that is) would excuse Danna from his duty to disclose the problem with SD's unlicensed software to Genutec's board.

To summarize, Danna's failure to discuss the evidence presented at trial regarding his personal knowledge of the licensing issue, and his failure to offer any legal reasoning or analysis as to why this evidence should have been ignored by the trial court, results in a waiver of the issue.  It is not this court's function to serve as Danna's backup appellate counsel.  (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546 [court declined to speculate on what legal argument could be asserted and treated matter waived].)  We find no reason to disturb the judgment.

We have carefully reviewed the evidence and arguments presented by Danna regarding the court's other three factual findings (numbers (a)(3)(4) & (b)), supporting liability on the first cause of action.  Each argument suffers from the same fatal defects mentioned above; Danna refers to only the evidence favorable to his defense and ignores Genutec's trial evidence on the same issue.  By not mentioning or discussing all the relevant testimony and exhibits, Danna has left it for us to figure out why all of

11

Genutec's evidence would not support the court's factual findings and legal conclusions. However, it is not our job to construct theories or arguments that would undermine the judgment. We must presume the record contains evidence to sustain every finding of fact and presume the judgment is correct. (*Foreman, supra,* 3 Cal.3d at p. 881.)

Accordingly, we will presume the evidence cited in Genutec's brief (and found in our appellate record) sufficiently supported the court's following three factual conclusions: (1) Danna instructed attorneys to reduce the amount of legal due diligence and failed to disclose this fact to the board of directors prior to the SD acquisition; (2) Danna instructed Fannin to reduce the technological due diligence related to the SD acquisition and did not disclose this fact to the board; and (3) Danna misrepresented to the board that after SD's acquisition Genutec would enjoy a five-year exclusive contract with SD's largest customer. The establishment of these facts, plus the two additional fiduciary breaches of due care discussed earlier—Danna's failure to disclose caller ID and under-licensing issues—amply support the court's legal conclusion Danna was liable to Genutec on the first cause of action.

### ii. Second and Third Causes of Action

Turning to the remaining causes of action for breach of fiduciary duty occurring after the SD acquisition (second and third causes of action), the trial court made the following findings in its statement of decision: "Conclusions of [l]aw: [¶] The same law as it relates to [d]irector and [o]fficer liability applicable to the [f]irst [c]ause of [a]ction . . . is applicable to the [second and third] [c]auses of [a]ction. Neither Danna nor Smit are protected from their actions by the business judgment rule because they did breach their fiduciary duties to Genutec." (Emphasis omitted.)

The court made the following factual findings: "Each of these actions [second and third causes of action] amount to a substantial factor in the eventual demise and damage to Genutec. [¶] The following facts support this conclusion:

12

"1) Failure to disclose to the board of directors issues related to the lack of proper licensing of [SD's] software acquired in the [SD] acquisition.

"2) Failed to disclose to the board of directors the true reasons for delays, including Danna's failure to provide necessary documentation to the auditor, in the preparation of the audit by Stonefield Josephson.

"3) Refusal to hire more programmers to help Smit rewrite the [SD] software.

"4) Failing to inform the board of directors of Smit's request for more programmers, the need for more programmers and the reason more programmers were needed due to a total rewrite of the [SD] program was necessary and being conducted.

"5) Failing to accurately maintain the [a]ccounts [r]eceivable ledger by removing overdue accounts from accounts receivable and carrying them as a bad debt so as to increase EBITDA.

"6) Knowingly submitting to [the lenders,] Seaview and TICC[,] altered financial information in [c]ompliance [c]ertificates required by the loan terms between Genutec and Seaview/TICC."

Danna asserts there was insufficient evidence to support the second cause of action because Genutec dismissed from the lawsuit Hoorizadeh, who was Genutec's CFO.  Danna explains Genutec must comply with the terms of the Sarbanes-Oxley Act of 2002 (SOX) (15 U.S.C. § 7241), which he says mandates, "the principal executive officer and the principal financial officer are directly responsible for the accuracy, documentation and submission of all financial reports as well as internal control structure."[1]  Danna maintains Hoorizadeh was dismissed because "Genutec could not

---

[1]      Danna's statement is an abbreviated summary of the statute.  15 U.S.C. section 7241 contains several regulations regarding a principal executive officer's and principal financial officer's responsibility for financial reports.  It requires "the signing officer" to certify each annual or quarterly report filed under SOX has complied with several requirements listed in 15 U.S.C. section 7241, subdivisions (a)(1)-(6).

13

provide substantial evidence to support these claims." It is unclear what claims Danna is referring to. It appears Danna believes Hoorizadeh's dismissal somehow negates all the evidence that Danna breached his fiduciary duties with respect to manipulated financial documents. However, Danna failed to present any evidence proving why Genutec dismissed Hoorizadeh. It could have been due to a settlement or any other number of reasons. We will not speculate or blindly accept Danna's opinion the dismissal occurred because Genutec conceded there was no evidence of financial discrepancies.

After reciting all the favorable evidence presented at trial to support his defense to the second cause of action, Danna asserts, "Genutec did not identify any specific allegedly falsified or manipulated documents; what the differences were, etc. . . . ." Genutec devotes five pages of its brief discussing the various ways Danna engaged in "misconduct to conceal Genutec's true financial condition from the lenders and the investing public." Each point is supported by multiple citations to evidence in the record. Genutec explains that for one year after the SD acquisition, two independent firms, Stonefield Josephson (SJ) and Singer Lewak (SL), conducted audits of Genutec's books. The audit was required for Genutec to become a publicly traded company. Genutec observes Danna's claim there is "no evidence" is only possible because he omitted from the record the testimony of SJ's senior audit manager Francis Asefaw, and the testimony of SL's partner Steve Rapattoni. These witnesses testified Danna manipulated the financial statements by, among other things, failing to properly indentify costs as expenses, improperly capitalized expenses, and listing accounts receivable that could not be collected and should have been written off. By not mentioning or discussing Genutec's evidence, Danna has left it for us to figure out why this evidence would not support the court's factual findings. As discussed above, we must presume the record contains evidence to sustain every finding of fact and presume the judgment is correct unless the contrary is shown. (*Foreman, supra,* 3 Cal.3d at p. 881.)

14

Danna contends there was insufficient evidence to support the third cause of action because Danna's delay of the audit was never a part of Genutec's complaint. Alternatively, he asserts there was evidence (Hoorizadeh's testimony) that Danna was not the reason for the delays. Without supporting record references, Danna asserts one of the major reasons for the delay was the SOX requirements. He concludes, "Obviously, Danna would not delay the audit since the objective of Genutec was to complete the audits in a timely fashion in order to be ready to 'go public.'" This conclusion is not so obvious after one reads the evidence Genutec presents on this issue (evidence not discussed by Danna). Genutec explains it was not required to specifically plead all the foreseeable damages caused by Danna's manipulation of the financial records. Danna does not provide legal authority to support his theory Genutec was required to itemize in the pleadings that the audit delays were an example of how Genutec was damaged as a result of the altered financial records. We deem the argument waived.

Danna also appears to have forgotten there were other reasons stated by the court with respect to the second and third causes of action. Danna makes no mention of the court's factual finding he breached his fiduciary duty by refusing to hire more programmers to help Smit rewrite the software and by failing to inform the board of directors about the need for more programmers *and* the lack of licensing. It is reasonable to conclude this evidence, apart from the other evidence, would be sufficient to support the court's finding of liability on the second and third causes of action.

### iii. *Fourth Cause of Action*

Finally, we address the breach of loyalty claim (fourth cause of action). With respect to this claim, the court made three findings as follows:

"1) Each of the acts alleged in the [f]ourth [c]ause of [a]ction were disclosed to the board of directors. Hunter, Taus, and other members of the board of directors were fully aware that Danna would be repaid past-due and accrued salary and

15

bonuses from the proceeds of the [SD] acquisition. It was also a term of the loan package that past due salaries be paid.

"2) Danna's offer of $114,000 in dialing services to Platinum Mortgage was an effort on his part to entice a customer to use the dialing services of Genutec, hoping Platinum Mortgage would then remain a customer. These acts did not constitute a breach of Danna's fiduciary duty to Genutec. The business judgment rule protects Danna from liability for this decision because as it relates to this decision it was a legitimate and good faith exercise of his business decision making authority.

"3) However, Danna's dismissal of Genutec's lawsuit against Tseng without board of director approval was a violation of Danna's duty of loyalty, good faith and due [care]."

We need only briefly address Danna's arguments with respect to the fourth cause of action. The court based liability on the grounds "Danna's dismissal of Genutec's lawsuit against Tseng without board of director approval was a violation of Danna's duty of loyalty, good faith and due [care]." Without any citations to the record, Danna boldly asserts he "did not dismiss this litigation[]." He opines the litigation was dismissed by Joe LaTorre, director and chair of the audit department. Danna does not appear to have any evidence in the record to support this theory, because he cites to none. We cannot reverse the judgment based on an appellant's self-serving statement he thinks the court got it wrong. We need proof. As discussed above, we must presume the record contains evidence to sustain every finding of fact and presume the judgment is correct. (*Foreman, supra,* 3 Cal.3d at p. 881.)

D. *Evidentiary Error*

Danna asserts the court erroneously made two evidentiary rulings. He provides no supporting legal authority, and more importantly, no argument as to why these errors prejudiced his case. If the errors were not prejudicial, we have no basis to reverse the judgment.

16

Danna raises the first evidentiary error in the form of a question for which he provides no answer. He asks, "Did the [c]ourt err in allowing testimony into the record by David Montoya from [e]xhibit [No.] 237, (the taped phone conversation with [Weiss] without . . . Weiss's knowledge) regarding the legal due diligence, over objections from defense attorney, Eric Kennedy, as to this exhibit not being admitted into evidence and that it was hearsay[?] Defendants were never given a chance to compare the audio tape versus the transcription of the phone call. Genutec subsequently included [Weiss] in one of their amended [c]omplaints."

The above three sentences comprise the entire argument on this issue. This meager offering is insufficient for us to conduct a meaningful review. Danna does not provide any record references, other than noting which exhibit contains a transcript of a telephone conversation. Without record references, we are left to speculate as to when the objection was made and the basis for the court's ruling. Similarly, we cannot determine without record citations whether Danna actually asked and was denied permission to compare the audio tape with the transcript. If there was a discrepancy, he does not mention it on appeal and, therefore the relevance of this fact is a mystery. And finally Danna fails to explain, and we will not speculate, why Genutec's addition of Weiss to the complaint had any legal impact on the issue of whether to admit the transcript into evidence. Weiss was dismissed from the lawsuit before trial after he prevailed on a summary judgment motion. It is incumbent upon an appellant to present relevant legal authority and reasoned argument on each point made, otherwise, the argument may be deemed waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).) We conclude the argument is waived.

The second evidentiary issue was also raised in the form of question and without a hint of a solution. Danna asks, "Did the [c]ourt err in relying on the testimony of David Montoya, of Seaview . . . who was never a Genutec employee; but deemed the '[m]ost [k]nowledgeable [p]erson for Genutec.' His testimony amounted to hearsay."

17

Once again, we are left to speculate as to whether anyone objected to Montoya's testimony and if the court ruled on the matter because Danna failed to provide us with any citations to the record. Moreover, Danna made no attempt to provide any legal analysis or reasoning on the issue. We deem the issue waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

## F. Court Confusion

Danna asserts the court was confused as to who was the plaintiff in the case. He explains it was Genutec and not the lenders (TICC and Seaview). He also points out that when the company was restructured in 2002, it was a viable company. He adds that after the restructuring, the new management team and board sold off assets to company insiders. Danna provides no record citations to support any of the above statements. If we were to assume, for the sake of argument, all the statements were supported by the record, we would have to speculate as to how these facts prove the court was confused and did not understand Genutec was the plaintiff in the lawsuit. It is incumbent upon an appellant to present relevant legal authority and reasoned argument on each point made, otherwise, the argument may be deemed waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.) We conclude the argument is waived.

## G. Punitive Damages

Danna challenges the punitive award by first citing legal authority holding punitive damages cannot be awarded for a breach of fiduciary duty unless there is also evidence of malice, fraud, or oppression. "'The wrongdoer "'must act with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights. [Citations.]'" Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy. The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's

18

rights, a level which decent citizens should not have to tolerate.'" (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287.)

Danna next argues there was insufficient evidence to support all the elements required for exemplary damages as stated in Civil Code section 3294. He asserts, "There was no intent on . . . Danna's part to cause damage to Genutec. Where is the evidence that any of these allegations against . . . Danna had any effect on the income of Genutec or caused any damage to Genutec or were the demise of Genutec? [¶] Did the [c]ourt err in awarding $1,000,000 in punitive damages against Danna when he is in Chapter 7 [b]ankruptcy and has no assets. [¶] There is no evidence to support a finding that . . . Danna committed fraud based on the [e]lements of [f]raud."

The above quotation represents Danna's entire appellate argument. He has not provided us with enough information to conduct a meaningful review. It is not enough to say the court erred and ask this court to figure out why. Our review is also hampered by Danna's failure to include the testimony and exhibits admitted during phase II of the trial (taking place on May 3, 2013), that was devoted entirely to the issue of punitive damages. Danna completely ignores the evidence Genutec discusses and highlights from the May 3, 2013, hearing in support of the punitive damage award. In addition, there is no evidence in our record showing Danna has been declared bankrupt. We deem the issue waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785*; Mansell, supra,* 30 Cal.App.4th at pp. 545-546 [not proper function of Court of Appeal to search record on behalf of appellants or serve as "backup appellate counsel"]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellate court not required to consider points not supported by citation to authorities or record].)

19

III

The judgment is affirmed.  Respondent shall recover its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


IKOLA, J.


20