Filed 3/23/21  Russell v. BMW of North America CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MILTON RUSSELL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>    Defendant and Respondent. | B296778<br><br>Los Angeles County<br>Super. Ct. No. BC610090 |

APPEALS from a judgment and a postjudgment order of the Superior Court of Los Angeles County, Gregory Keosian, Judge. Affirmed.

Steven Brower and Tae J. Im, for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Thomas M. Peterson and Mark W. Allen, for Defendant and Respondent.

# INTRODUCTION

Milton Russell sued BMW of North America, LLC (BMW)[1] for violations of the Song-Beverly Consumer Warranty Act (Act) (Civ. Code,[2] § 1790 et seq.) and breaches of express and implied warranties after he discovered defects in a car he purchased from BMW. A jury found in BMW's favor on all of Russell's claims. On appeal, Russell contends the court erred in excluding evidence of a warranty extension BMW issued about two years after Russell filed this lawsuit. Russell also contends we must reverse BMW's $16,004.01 costs award if we reverse the judgment. As we explain, any error in excluding evidence of the warranty was harmless. Accordingly, we affirm the judgment and the order awarding costs.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Issues with Russell's Car

In December 2012, Russell bought a new car from BMW. The car was covered by a limited warranty, which expired after the earlier of four years or 50,000 miles of use.

During the first few years Russell owned the car, it consumed more oil than Russell believed was normal. Russell never saw the car leak oil or expel smoke from the exhaust, however. When the car had about 2,000 miles on it, Russell informed a "serviceman" at one of BMW's dealerships that he believed the car was consuming too much oil.

---

[1] Russell also sued South Bay BMW, but he later dismissed that entity without prejudice.

[2] All undesignated statutory references are to the Civil Code.

2

When Russell brought his car into a BMW dealership for service at around 39,000 miles, the dealership found a leak in the car's radiator. The dealership replaced the radiator.

In September 2015, when the car had about 50,700 miles of use, the car's " 'check engine' " warning light activated while Russell was driving on the freeway. The car's engine then began to lose power as the car went into " 'limp mode' " and decreased its speed to 45 miles per hour. Russell brought the car to a BMW dealership, where a technician discovered the car's crankcase ventilation line[3] was leaking, which had caused the car to " 'misfire.' " The technician also noted that several of the car's cylinders were having issues with " 'hot mass air flow.' "

Because the car's warranty had expired, the dealership quoted Russell about $1,085 to repair the crankcase ventilation line. The dealership also told Russell that his car needed additional repairs unrelated to the damaged ventilation line and the car's malfunction on the freeway. Russell declined to have the dealership replace the ventilation line or make the other repairs. Instead, he had an independent mechanic replace the crankcase ventilation line for $500.

In October 2015, Russell called a BMW representative to report that he was having problems with his car. Russell told the representative that the car had lost power while he was operating it and that he believed the car consumed too much oil. Russell didn't make a specific request for BMW to replace or fix his car, but he asked the representative what BMW could offer him. The

---

[3] Throughout the record, this part is also referred to as a "crankcase ventilation hose" or a "crankcase hose." For consistency, we refer to the part as a crankcase ventilation line.

representative provided Russell with an address where his lawyer could contact the company.

Around July 2016, when the car had about 68,200 miles on it, Russell brought it to a BMW dealership for service. The dealership replaced the car's crankcase ventilation line at no cost to Russell. Although the ventilation line wasn't broken, the dealership replaced the part because of a service action that BMW had issued before Russell brought the car in for service. During a subsequent visit to a BMW dealership for an oil change, Russell's car had an unspecified "drive train malfunction" that the dealership didn't disclose to Russell.

According to Russell's expert, the car's primary defects were excessive oil consumption and misfires caused by faulty piston rings. The expert noted that BMW had documented one misfire in Russell's car shortly after it exceeded 50,000 miles of use, but none of BMW's reports indicated the car had any misfires or issues with excessive oil consumption before it reached 50,000 miles. During an inspection in September 2017, when the car had more than 90,000 miles of use, the expert observed misfires in six of the car's eight pistons. The expert didn't testify about any connection between the car's crankcase ventilation line and its excessive oil consumption or misfires.

## 2.    Russell Sues BMW

In February 2016, Russell sued BMW for violations of the Act and breaches of express and implied warranties. Specifically, Russell asserted claims for: (1) violation of section 1793.2, subdivision (d) (first cause of action); (2) violation of section 1793.2, subdivision (b) (second cause of action); (3) violation of section 1793.2, subdivision (a)(3) (third cause of action); (4) breach of express warranty in violation of sections 1791.2,

subdivision (a), and 1794 (fourth cause of action); and (5) breach of implied warranty in violation of sections 1791.1 and 1794 (fifth cause of action).[4] Russell alleged that during his car's warranty period, BMW failed to timely repair or replace the car after it suffered defects causing: excessive oil consumption; radiator leaks; crankcase ventilation line leaks; issues related to the transmission, vent valves, and vent valve connecting lines; and activation of the drivetrain malfunction, check engine, low coolant, and low oil lights.

In September 2018, BMW issued a limited warranty extension for the crankcase ventilation lines on certain models of its cars, including the model Russell purchased.[5] BMW extended the warranty for a qualifying model's crankcase ventilation line to 10 years or 120,000 miles. The Warranty Extension didn't modify any other aspect of a car's existing limited warranty. The Warranty Extension established a reimbursement procedure for qualifying owners like Russell who had their crankcase ventilation lines repaired or replaced before the extension was issued. To obtain reimbursement, an owner needed to submit a "reimbursement request" online or through mail or fax and

[4] After the evidence phase of trial, Russell dismissed the third cause of action as well as the fourth cause of action for breach of express warranty to the extent it alleged a violation of section 1791.2, subdivision (a).

[5] BMW also drafted a letter intended to inform qualifying owners about the warranty extension and how to obtain reimbursement for crankcase ventilation line repairs made before the extension was issued. Because Russell doesn't distinguish the two documents in his appellate briefs, we collectively refer to the warranty extension and letter as the "Warranty Extension" or "extension."

submit " 'PDF files' of the supporting documentation" showing the owner had the car's crankcase ventilation line replaced before the extension was issued.

A few days before trial began in late January 2019, Russell indicated for the first time that he intended to rely on the Warranty Extension to prove his claims.[6] Specifically, Russell wanted to use the extension to supplement his expert's opinion on whether BMW created "obstacles" for how their dealerships should repair cars and whether BMW ever "permanently repaired" Russell's car. BMW argued evidence of the Warranty Extension should be excluded because the extension didn't exist at the time the parties conducted discovery and the parties' experts were never asked to provide an opinion based on the extension when they were deposed.

The court excluded evidence of the Warranty Extension and precluded Russell's expert from relying on it during his testimony. The court reasoned: "And now we have these documents subsequently acquired actually on the day of trial or a day after trial. … I think it's just too late in the game to have the expert testify or to change his opinion based on these documents. [¶] And I'm also not sure relevance-wise whether how relevant they are. I mean, these are documents prepared in September and July of 2018 when the claims that this action is based on occurred way, way, way prior to that, as well as it just being an unfair surprise, even though they are defense documents, they're

---

[6] At the same time, Russell also tried to introduce similar warranty extensions for fuel injectors and high-pressure fuel pumps on most of the same BMW models. Those warranty extensions aren't relevant to the issues raised in this appeal.

BMW documents, they were never raised at least for purposes of expert opinions prior to the date of trial."

During the evidence phase of trial, Russell renewed his request to admit evidence of the Warranty Extension, which the court denied. The court also sustained one of BMW's objections to a question Russell asked one of BMW's customer support engineers about the extension.

The jury returned verdicts in BMW's favor on all of Russell's claims. The jury found that although Russell's car had a defect covered by warranty that substantially impaired the car's value, use, or safety, BMW did not fail to complete necessary repairs within a reasonable time. The court entered judgment in BMW's favor.

After judgment was entered, BMW requested $34,159.21 in costs. The court granted Russell's motion to tax costs reducing BMW's costs award to $16,004.01.

Russell appeals from the judgment and the order awarding BMW costs. We consolidated the appeals for purposes of briefing, oral argument, and decision.

## DISCUSSION

Russell contends the court prejudicially erred when it precluded him from introducing or relying on evidence of the Warranty Extension. Had the court admitted that evidence, Russell claims, he could have proved BMW violated the Act and the express warranty covering his car. Russell also contends he should have been allowed to use evidence of the Warranty Extension to impeach one of BMW's witnesses who testified Russell was not entitled to a reimbursement for the costs of replacing his crankcase ventilation line. As we explain, any error in excluding the evidence was harmless.

7

The Act is intended to protect consumers who purchase products covered by an express warranty. (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798.) If a manufacturer can't repair a product covered by a warranty after a reasonable number of attempts, the Act requires the manufacturer to replace the product or reimburse the buyer. (§ 1793.2, subd. (d)(1).) The Act applies to consumers, like Russell, who purchase "new motor vehicles." (§ 1793.2, subd. (d)(1).)

A buyer who is damaged by a manufacturer's violation of the Act may bring an action for damages and other legal and equitable relief. (§ 1794, subd. (a).) To prove a violation of the Act, the buyer must show: (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle; (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair; and (3) the manufacturer or its representative did not repair the nonconformity after a reasonable number of attempts. (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1101.)

Before excluding evidence, the trial court must weigh its probative value against the likelihood that its admission will "necessitate undue consumption of time or … create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review a court's decision to exclude evidence for abuse of discretion. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447 (*Christ*).) We will not reverse that decision unless it was arbitrary, capricious, or patently absurd and resulted in a miscarriage of justice. (*Ibid.*) To show there was a miscarriage of justice, the appellant must

8

demonstrate "it is reasonably probable that [he] would have received a more favorable result at trial had the error not occurred." (*Id*. at p. 447.)

Russell insists that had he been allowed to introduce evidence of the Warranty Extension he could have proved BMW violated an express warranty when it did not reimburse him for the cost of replacing his crankcase ventilation line in September 2015. As we explained above, the Warranty Extension established a procedure under which an owner could request reimbursement for the cost of replacing a qualifying car's crankcase ventilation line. Russell, however, never claimed in the trial court, and he doesn't claim on appeal, that he could have presented evidence showing he requested a reimbursement for that expense under the Warranty Extension. And nothing in the extension indicates an owner is entitled to receive a reimbursement without first making a request and providing documentation that shows the owner made repairs covered by the extension. Thus, Russell hasn't shown it is reasonably probable that but for the court's exclusion of evidence of the Warranty Extension, he could have proved a violation of the Act or a breach of an express warranty based on BMW's failure to reimburse him for the cost of replacing his car's crankcase ventilation line. (*Christ, supra*, 2 Cal.App.5th at p. 447.)

Russell also claims his expert could have relied on evidence of the Warranty Extension to establish a "potential connection between the failure of the crankcase ventilation line to: (1) the excess oil consumption; (2) the 'limp mode' [Russell] experienced on the freeway; and (3) the drivetrain malfunction lights the Vehicle experienced." But Russell points to nothing in the Warranty Extension that would provide new or additional

9

evidence connecting the car's problems with the crankcase ventilation line to the defects Russell claims his expert could have testified about. Indeed, even before Russell sought to introduce evidence of the Warranty Extension, his expert was aware that the car had issues with its crankcase ventilation line and that the part was replaced twice, once in September 2015 and again in July 2016. Yet, the expert never testified that the car's defects involving excessive oil consumption, going into limp mode, and activation of the drivetrain malfunction light were related to defects in the crankcase ventilation line. Nor did the expert testify that the ventilation line continued to cause the car problems after either time it was replaced. Thus, it's not reasonably likely that had the court admitted evidence of the Warranty Extension, Russell's expert could have established a connection between the faulty crankcase ventilation line and any other defect that would constitute a violation of the Act or a breach of an express warranty.

Russell next contends the court should have allowed him to rely on evidence of the Warranty Extension to impeach Anthony Cavanaugh, BMW's after sales area manager. At trial, Russell's counsel asked Cavanaugh whether he had "seen anything showing [Russell] was reimbursed by BMW" for the expense of replacing the crankcase ventilation line in September 2015. Cavanaugh replied, "No, and he has no entitlement to reimbursement for it." Cavanaugh later testified that BMW didn't replace the crankcase hose in Russell's car for free in September 2015 because Russell's car had exceeded 50,000 miles of use, and the warranty had therefore expired, before Russell brought the car in for service. According to Russell, Cavanaugh's testimony was false because: (1) the warranty for his car's

crankcase ventilation line was extended to 120,000 miles when BMW issued the Warranty Extension; and (2) the extension entitled Russell to request reimbursement for the amount he spent to replace his car's crankcase ventilation line in September 2015. By excluding evidence of the Warranty Extension, Russell complains, the court precluded him from exposing the falsity of Cavanaugh's testimony.

This argument lacks merit. As we explained above, Russell doesn't claim on appeal, nor did he claim below, that he could have presented evidence showing he made a request for reimbursement of the cost to replace his car's crankcase ventilation line in September 2015. Thus, Cavanaugh's testimony that Russell wasn't entitled to reimbursement was, at most, ambiguous. In any event, any error related to Cavanaugh's testimony about Russell's right to reimbursement was harmless. That is, Russell hasn't shown it is reasonably likely he could prove BMW violated the Warranty Extension to the extent it allows qualifying owners to be reimbursed for out-of-pocket expenses used to replace their cars' crankcase ventilation lines. Likewise, any error related to Cavanaugh's testimony that BMW didn't replace the crankcase ventilation line in Russell's car free of charge in September 2015 because the car's warranty had already expired was harmless. BMW replaced the car's ventilation line free of charge in July 2016, and Russell didn't present any evidence showing his car continued to experience problems related to that part.

Finally, Russell argues for the first time in his reply brief that but for the court's exclusion of the Warranty Extension, he could have proved a claim for violation of an express warranty under Commercial Code section 2313. This claim isn't properly

11

before us because Russell didn't raise it in his opening brief, nor did he ask the court for leave to amend his complaint to allege a violation of Commercial Code section 2313 when he sought to introduce evidence of the Warranty Extension. (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [appellate courts won't consider issues raised for the first time in a reply brief because it deprives opposing counsel of the opportunity to respond].) Regardless, any error in excluding evidence of the Warranty Extension was harmless because, as we explained above, Russell hasn't shown that but for the court's exclusion of that evidence, there was a reasonable probability he could have established a connection between the defects in his car's crankcase ventilation line and any breach of an express warranty.

In short, we conclude any error in excluding evidence of the Warranty Extension was harmless.[7] Because we affirm the judgment, we also affirm the postjudgment order awarding BMW $16,004.01 in costs.

---

[7] In light of this conclusion, we need not address BMW's argument that Russell was precluded from relying on the extension because it created new rights, such as a right to reimbursement, that were never pled in the operative complaint.

## DISPOSITION

The judgment and postjudgment order are affirmed. BMW shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.